Hyung S. Choi, State Bar 015669
Veronika Fabian, State Bar 018770
CHOI & FABIAN, PLC
1423 S. Higley Rd., Suite 110
Mesa, Arizona  85206
tel:  (480) 517-1400
fax: (480) 517-6955
hyung@choiandfabian.com
veronika@choiandfabian.com
 Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kevin W. Raslich, | NO. |
| Plaintiff, | |
| vs. | **COMPLAINT FOR DAMAGES** |
| Experian Information Solutions, Inc, TransUnion LLC, Equifax Information Services LLC, AFNI, INC., Cavalry Portfolio Services, LLC, Asset Acceptance LLC, Harvard Collection Services, Inc., Midland Credit Management, Inc., Credit Bureau Collection Services, Inc.  d/b/a CBCS, | |
| Defendants. | |

## INTRODUCTION

1.     An imposter stole Kevin W. Raslich's identity while he was deployed as a

military policeman in Iraq.  Defendants reported numerous delinquent

accounts opened by the imposter on Mr. Raslich's credit reports.  Despite Mr.

Raslich's repeated notices, Defendants continue to report these incorrect and

delinquent debts on his credit reports, damaging his ability to obtain credit.

Mr. Raslich brings this action to remedy Defendants' violations of the Fair

Debt Collection Practices Act ("FDCPA") and the Fair Credit Reporting Act.

("FCRA").

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over this matter pursuant to the FCRA, 15 U.S.C.

§ 1681(p) and the FDCPA, 15 U.S.C. § 1692k(d).

3.    Defendants are licensed to do business in the state of Arizona, and thus this

Court has personal jurisdiction over them and venue is proper.  28 U.S.C. §

1391.

## PARTIES

4.    Plaintiff Kevin W. Raslich ("Mr. Raslich") is a natural person residing in

Cochise County, Arizona.

5.    Plaintiff is an individual and is thus a  "consumer" as defined by § 1681a(c)

of the FCRA.

6.    Plaintiff is a natural person, allegedly obligated to pay a debt, and is thus a

"consumer" under the FDCPA.  15 U.S.C. § 1692a(3).

7.    Defendant Experian Information Solutions, Inc. ("Experian") is an Ohio

corporation licensed to do business in Arizona.

8.     Experian is a consumer reporting agency, as defined in § 1681(f) of the

FCRA, and regularly engaged in the business of assembling, evaluating, and

dispersing information concerning consumers for the purpose of furnishing

consumer reports, as defined in § 1681a(d) of the FCRA to third parties.

9.     Defendant TransUnion LLC ("TransUnion") is a Delaware limited liability

company licensed to do business in Arizona.

10.    TransUnion is a consumer reporting agency, as defined in § 1681(f) of the

FCRA, and regularly engaged in the business of assembling, evaluating, and

dispersing information concerning consumers for the purpose of furnishing

consumer reports, as defined in § 1681a(d) of the FCRA to third parties.

11.    Equifax Information Services LLC ("Equifax") is a Georgia limited liability

company, licensed to do business in Arizona.

12.    Equifax is a consumer reporting agency, as defined in § 1681(f) of the

FCRA, and regularly engaged in the business of assembling, evaluating, and

dispersing information concerning consumers for the purpose of furnishing

consumer reports, as defined in § 1681a(d) of the FCRA to third parties.

13.    Defendant AFNI, Inc., ("AFNI") is an Illinois corporation licensed to do

business in Arizona by the Arizona Secretary of State.

14.    AFNI is licensed as a collection agency by the Arizona Department of

Financial Institutions.

15.   AFNI regularly uses the mails and telephone in a business the principal purpose of which is the collection of debts.

16.   AFNI regularly collects or attempts to collect debts for other parties.  It is a "debt collector" as defined in the FDCPA. 15 U.S.C. § 1692a(6).

17.   Defendant Cavalry Portfolio Services, LLC ("CPS") is a Delaware limited liability company licensed to do business in Arizona.

18.   CPS is licensed as a collection agency by the Arizona Department of Financial Institutions.

19.   CPS regularly uses the mails and telephone in a business the principal purpose of which is the collection of debts.

20.   CPS regularly collects or attempts to collect debts for other parties.  It is a "debt collector" as defined in the FDCPA. 15 U.S.C. § 1692a(6).

21.   Defendant Asset Acceptance LLC ("Asset Acceptance") is a Delaware limited liability company, authorized to do business in the state of Arizona.

22.   Asset Acceptance is not licensed as a collection agency by the Arizona Department of Financial Institutions.

23.   Asset Acceptance regularly uses the mails and telephone in a business the principal purpose of which is the collection of debts.

24.   Asset Acceptance regularly collects or attempts to collect debts for other parties.  It is a "debt collector" as defined in the FDCPA. 15 U.S.C. § 1692a(6).

25. Defendant Harvard Collection Services, Inc. ("Harvard Collection") is an Illinois corporation, authorized to do business in the state of Arizona.

26. Harvard Collection is licensed as a collection agency by the Arizona Department of Financial Institutions.

27. Harvard Collection regularly uses the mails and telephone in a business the principal purpose of which is the collection of debts.

28. Harvard Collection regularly collects or attempts to collect debts for other parties. It is a "debt collector" as defined in the FDCPA. 15 U.S.C. § 1692a(6).

29. Defendant Midland Credit Management, Inc. ("MCM") is a Kansas corporation, licensed to do business in the state of Arizona.

30. MCM is licensed as a collection agency by the Arizona Department of Financial Institutions.

31. MCM regularly uses the mails and telephone in a business the principal purpose of which is the collection of debts.

32. MCM regularly collects or attempts to collect debts for other parties. It is a "debt collector" as defined in the FDCPA. 15 U.S.C. § 1692a(6).

33. Defendant Credit Bureau Collection Services, Inc. d/b/a CBCS ("CBCS") is an Ohio corporation, licensed to do business in the state of Arizona.

34. CBCS is licensed as a collection agency by the Arizona Department of Financial Institutions.

35.   CBCS regularly uses the mails and telephone in a business the principal purpose of which is the collection of debts.

36.   CBCS regularly collects or attempts to collect debts for other parties.  It is a "debt collector" as defined in the FDCPA. 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

37.   Mr. Raslich is a Specialist (E4) Rank and a military policeman in the United States Army.

38.   From 2001 to 2005, Mr. Raslich resided in Ft. Hood, Texas.

39.   From October of 2005 to November of 2008, Mr. Raslich resided in Hawaii.

40.   In November of 2008, Mr. Raslich moved to Sierra Vista, Arizona.

41.   In the fall of 2003, Mr. Raslich's vehicle was broken into and his driver's license and social security card were stolen.

42.   Shortly thereafter, he was deployed to Iraq from March of 2004 to March of 2005.

43.   He was later deployed to Iraq for a second time from February of 2007 to February of 2008.

44.   During Mr. Raslich's deployments in Iraq, someone began using his name and personal identifying information to obtain credit.

45.   For example, a SPRINT account was opened in his name in November of 2007, while he was in Iraq.

46.     When Mr. Raslich returned home from Iraq, he began receiving repeated

        phone calls and various collection letters from Defendants and other

        collection agencies.

47.     Mr. Raslich did not open any of these accounts.

48.     Mr. Raslich disputed these accounts with both Defendant debt collectors and

        Defendants TransUnion and Experian.

49.     He had only limited success.

50.     With respect to Equifax, he was not even able to get his credit report.

51.     As of June 25, 2008, a security alert was added to Mr. Raslich's Experian,

        TransUnion and Equifax credit reports.

**Cingular/AFNI, Inc.**

52.     In November of 2006, an imposter opened an account in Mr. Raslich's name

        with Cingular, partial account no. 2017120680.

53.     Mr. Raslich's July 1, 2008 Experian Credit Report lists the account as a

        collection account, past due as of June of 2008.  (A redacted copy of Mr.

        Raslich's July 1, 2008 Experian Credit Report is attached as Exhibit A).

54.     In July of 2008, Mr. Raslich informed AFNI that he was the victim of identity

        theft.

55.     On July 12, 2008, AFNI sent Mr. Raslich a letter stating that it was

        investigating his dispute, but that it needed additional information to

investigate his claim that the account was not his.  (A copy of that letter is attached as Exhibit B).

56.   On July 21, 2008, Mr. Raslich responded to AFNI, stating that he did not want to provide the personal information AFNI was requesting such as his driver's license, passport, proof of residency, etc.

57.   On August 12, 2008, AFNI sent Mr. Raslich a letter stating that it had verified Mr. Raslich's debt with the creditor and that it was resuming collection activities.  (A copy of that letter is attached as Exhibit C).

58.   On July 21, 2008, Mr. Raslich sent a letter to Experian disputing the account and stating that he had never opened an account with Cingular.  (A copy of Mr. Raslich's dispute letter is attached as Exhibit D).

59.   He sent a copy of this letter to AFNI.

60.   Upon information and belief, Experian forwarded Mr. Raslich's dispute to AFNI.

61.   Upon information and belief, AFNI did not conduct a reasonable investigation.

62.   Instead, AFNI verified that the account was accurate and updated the item to Experian in August of 2008.

63.   Experian did not conduct an independent investigation of Mr. Raslich's dispute.

64. Experian's investigation of Mr. Raslich's dispute was not reasonable given that it knew that he was the victim of identity theft.

65. On August 25, 2008, Experian sent Mr. Raslich the results of its investigation of his dispute.  (A redacted copy of the results of Experian's investigation is attached as Exhibit E).

66. Experian and AFNI continued to report the account as a collection account in the amount past due of $869.00 as of August 2008.

67. On August 19, 2008, Mr. Raslich disputed the same account, which was appearing on his TransUnion credit report.   (A copy of Mr. Raslich's dispute letter is attached as Exhibit F).

68. Again, Mr. Raslich stated that the account was not his.

69. Mr. Raslich sent a copy of his dispute to AFNI.

70. Upon information and belief, Transunion forwarded Mr. Raslich's dispute to AFNI.

71. AFNI did not conduct a reasonable investigation of Mr. Raslich's dispute.

72. Upon information, AFNI verified that the account was accurate and updated the item to Transunion.

73. Upon information and belief, Transunion did not conduct an independent investigation of Mr. Raslich's dispute.

74. Transunion's investigation of Mr. Raslich's dispute was not reasonable given that it knew that Mr. Raslich was the victim of identity theft.

75.   On September 18, 2008, TransUnion sent Mr. Raslich the results of its

      investigation.  (A copy of the results of TransUnion's investigation is

      attached as Exhibit G).

76.   TransUnion and AFNI continued to report the account in the amount past due

      in the amount of $869.00.

77.   On October 16, 2008, AFNI sent Mr. Raslich yet another collection letter.  (A

      copy of that letter is attached as Exhibit H).

**Embarq/AFNI, Inc.**

78.   In November of 2007, an imposter opened an account in Mr. Raslich's name

      with Embarq, partial account No. 2024775788

79.   During November of 2007, Mr. Raslich was deployed in Iraq.

80.   The account went into default in December of 2007.

81.   Mr. Raslich's July 1, 2008 Experian Credit Report showed the account as a

      collection account, past due as of December of 2007 in the amount of

      $339.00.  (Exhibit A)

82.   On July 21, 2008, Mr. Raslich sent a letter to Experian disputing the account

      and pointing out that he had been deployed in Iraq when the account was

      opened.  (Exhibit D).

83.   Mr. Raslich sent a copy of that letter to AFNI.

84.   Upon information and belief, Experian forwarded Mr. Raslich's dispute to

      AFNI.

85.   Upon information and belief, AFNI did not conduct a reasonable investigation.

86.   Instead, AFNI verified that the account was accurate to Experian.

87.   Experian did not conduct an independent investigation of Mr. Raslich's dispute.

88.   Experian's investigation of Mr. Raslich's dispute was not reasonable given that it knew that Mr. Raslich was the victim of identity theft.

89.   On August 25, 2008, Experian sent Mr. Raslich the results of its investigation of his dispute, stating that the account would remain on his credit report. (Exhibit E).

90.   Experian and AFNI continued to report the account as a collection account in an amount past due of $399.00, as of August 2008.

91.   On August 19, 2008, Mr. Raslich disputed the same account, which was appearing on his TransUnion credit report.  (Exhibit F).

92.   Again, Mr. Raslich noted that the account could not be his because he had been deployed in Iraq at that time.

93.   Mr. Raslich sent a copy of his dispute to AFNI.

94.   Upon information and belief, TransUnion forwarded Mr. Raslich's dispute to AFNI.

95.   AFNI did not conduct a reasonable investigation of Mr. Raslich's dispute.

96.    Upon information, AFNI verified the account as accurate and updated the
       item to TransUnion.

97.    TransUnion did not conduct an independent investigation of Mr. Raslich's
       dispute.

98.    TransUnion's investigation of Mr. Raslich's dispute was not reasonable given
       that it knew that Mr. Raslich was the victim of identity theft.

99.    On September 18, 2008, TransUnion sent Mr. Raslich the results of its
       investigation, stating that the account had been verified and updated.
       (Exhibit G).

100.   TransUnion and AFNI continued to report the account in the amount past due
       in the amount of $339.00.

### Southwestern Bell Telephone/Asset Acceptance

101.   In October of 2007, an imposter opened an account in Mr. Raslich's name
       with Southwestern Bell Telephone, partial account no. 3475....

102.   During October of 2007, Mr. Raslich was deployed in Iraq.

103.   The account went into default in June of 2008.

104.   Mr. Raslich's July 1, 2008 Experian Credit Report showed the account as a
       collection account, past due as of June of 2008 in the amount of $188.00.
       (Exhibit A).

105.    On July 21, 2008, Mr. Raslich sent a letter to Experian disputing the account and pointing out that he had been deployed in Iraq when the account was opened.  (Exhibit D).

106.    Upon information and belief, Experian forwarded Mr. Raslich's dispute to Asset Acceptance.

107.    Upon information and belief, Asset Acceptance did not verify the debt.

108.    On August 25, 2008, Experian sent Mr. Raslich the results of its investigation of his dispute, stating that the item had been deleted.  (Exhibit E).

109.    On August 19, 2008, Mr. Raslich disputed the same account, which was appearing on his TransUnion credit report.  (Exhibit F).

110.    Again, Mr. Raslich noted that the account could not be his because he had been deployed in Iraq at that time.

111.    Mr. Raslich sent a copy of his dispute to Asset Acceptance.

112.    Upon information and belief, TransUnion forwarded Mr. Raslich's dispute to Asset Acceptance.

113.    Asset Acceptance did not conduct a reasonable investigation of Mr. Raslich's dispute.

114.    Upon information, Asset Acceptance verified the account as accurate to TransUnion.

115.    Upon information and belief, TransUnion did not conduct an independent investigation.

116.   TransUnion's investigation was not reasonable given that it knew that Mr. Raslich was the victim of identity theft.

117.   On September 18, 2008, TransUnion sent Mr. Raslich the results of its investigation, stating that the account would remain.  (Exhibit G).

118.   TransUnion and Asset Acceptance continued to report the account in the amount past due of $190.00.

**Southwestern Bell Telephone/Asset Acceptance**

119.   In October of 2007, an imposter opened an account in Mr. Raslich's name with Southwestern Bell Telephone, partial account no. 3482....

120.   During October of 2007, Mr. Raslich was deployed in Iraq.

121.   Mr. Raslich's July 1, 2008 Experian Credit Report showed the account as a collection account, past due as of June of  2008 in the amount of $359.00. (Exhibit A).

122.   On July 21, 2008, Mr. Raslich sent a letter to Experian disputing the account and pointing out that he had been deployed in Iraq when the account was opened.  (Exhibit D).

123.   Mr. Raslich sent a copy of his dispute letter to Asset Acceptance.

124.   Upon information and belief, Experian forwarded Mr. Raslich's dispute to Asset Acceptance.

125.   Upon information and belief, Asset Acceptance did not verify the debt.

126.  On August 25, 2008, Experian sent Mr. Raslich the results of its investigation of his dispute, stating that the item had been deleted.  (Exhibit E).

127.  On August 19, 2008, Mr. Raslich disputed the same account, which was appearing on his TransUnion credit report.   (Exhibit F).

128.  Again, Mr. Raslich noted that the account could not be his because he had been deployed in Iraq at that time.

129.  Mr. Raslich sent a copy of his dispute to Asset Acceptance.

130.  Upon information and belief, TransUnion forwarded Mr. Raslich's dispute to Asset Acceptance.

131.  Asset Acceptance did not conduct a reasonable investigation of Mr. Raslich's dispute.

132.  Upon information, Asset Acceptance verified the account as accurate and updated the item to TransUnion.

133.  TransUnion did not conduct an independent investigation of Mr. Raslich's dispute.

134.  TransUnion's investigation of Mr. Raslich's dipute was not reasonable given that it knew that Mr. Raslich was the victim of identity theft.

135.  On September 18, 2008, TransUnion sent Mr. Raslich the results of its investigation, stating that the account had been verified and updated. (Exhibit G).

136.   TransUnion and Asset Acceptance continued to report the account in the amount past due in the amount of $362.00.

**SPRINT PCS/CPS**

137.   In December of 2004, an imposter opened an account in Mr. Raslich's name with SPRINT, PCS, partial account no. 5731181.

138.   During December of 2004, Mr. Raslich was deployed in Iraq.

139.   The account went into default.

140.   The account was assigned to CPS for servicing.

141.   CPS began to attempt to collect the alleged debt from Mr. Raslich.

142.   Mr. Raslich informed CPS that he was the victim of identity theft and that the account did not belong to him.

143.   Despite this information, CPS continued to report the account on Mr. Raslich's credit report without verifying the debt.

144.   Mr. Raslich's July 1, 2008 Experian Credit Report showed the account as a collection account, past due as of June of 2008 in the amount of $396.00. (Exhibit A).

145.   On July 21, 2008, Mr. Raslich sent a letter to Experian disputing the account and pointing out that he had been deployed in Iraq when the account was opened.  (Exhibit D).

146.   Mr. Raslich sent a copy of his dispute to CPS.

147. Upon information and belief, Experian forwarded Mr. Raslich's dispute to CPS.

148. Upon information and belief, CPS did not conduct a reasonable investigation of Mr. Raslich's dispute.

149. Upon information and belief, CPS verified the account as accurate to Experian.

150. Experian did not conduct an independent investigation of Mr. Raslich's dispute.

151. Experian's investigation of Mr. Raslich's dispute was not reasonable given that it knew that Mr. Raslich was the victim of identity theft.

152. On August 25, 2008, Experian sent Mr. Raslich the results of its investigation of his dispute, stating that the CPS item would remain.  (Exhibit E).

153. On August 19, 2008, Mr. Raslich disputed the same account, which was appearing on his TransUnion credit report.  (Exhibit F).

154. Again, Mr. Raslich noted that the account could not be his because he had been deployed in Iraq at that time.

155. Mr. Raslich sent a copy of his dispute to CPS.

156. Upon information and belief, TransUnion forwarded Mr. Raslich's dispute to CPS.

157. CPS did not conduct a reasonable investigation of Mr. Raslich's dispute.

158. Upon information and belief, CPS verified the account as accurate to TransUnion.

159. Upon information and belief, TransUnion did not conduct an independent investigation of Mr. Raslich's dispute.

160. TransUnion's investigation was not reasonable given that it knew that Mr. Raslich was the victim of identity theft.

161. On September 18, 2008, TransUnion sent Mr. Raslich the results of its investigation, with the account remaining as a collection account.  (Exhibit G).

**Sprint Account/Harvard Collection**

162. In November of 2007, an imposter opened a Sprint account in Mr. Raslich's name.

163. In November of 2007, Mr. Raslich was deployed in Iraq.

164. Mr. Raslich began receiving phone calls and letters from Harvard Collection regarding the account.

165. Mr. Raslich informed Harvard Collection that the account did not belong to him.

166. On July 30, 2008, Harvard Collection sent a purported verification of the debt, which was nothing more than a computer printout.  (A copy of Harvard Collection's letter and verification of the debt is attached as Exhibit I).

167.  On September 8, 2008, Harvard Collection sent Mr. Raslich a letter requesting that he fill out a fraud questionnaire so that they could investigate the account.  (A copy of Harvard Collection's letter is attached as Exhibit J).

168.  Mr. Raslich refused to do so as he had already explained to Harvard Collection that it was not his account.

169.  Mr. Raslich's July 1, 2008 Experian credit report, showed the account as a collection account with $169.00.  (Exhibit A).

170.  On July 21, 2008, Mr. Raslich sent a letter to Experian disputing the account and pointing out that he had been deployed in Iraq when the account was opened.  (Exhibit D).

171.  Mr. Raslich sent a copy of that dispute letter to Harvard Collection.

172.  Upon information and belief, Experian forwarded Mr. Raslich's dispute to Harvard Collection.

173.  Harvard Collection did not conduct a reasonable investigation of Mr. Raslich's dispute.

174.  Upon information and belief, Harvard Collection verified the account as accurate and updated the item to Experian.

175.  Upon information and belief, Experian did not conduct an independent investigation of Mr. Raslich's dispute.

176.  Experian's investigation of Mr. Raslich's dispute was not reasonable given that it knew that Mr. Raslich was the victim of identity theft.

177.  On August 25, 2008, Experian sent Mr. Raslich the results of its investigation of his dispute.  (Exhibit E).

178.  Experian and Harvard Collection continued to report the account as past due in the amount of $169.00 as of August 2008.

179.  On August 19, 2008, Mr. Raslich disputed the same account, which was appearing on his TransUnion credit report.  (Exhibit F).

180.  Again, Mr. Raslich noted that the account could not be his because he had been deployed in Iraq at that time.

181.  Mr. Raslich sent a copy of his dispute to Harvard Collection.

182.  Upon information and belief, TransUnion forwarded Mr. Raslich's dispute to Harvard Collection.

183.  Harvard Collection did not conduct a reasonable investigation of Mr. Raslich's dispute.

184.  Upon information, Harvard Collection verified the account as accurate and updated the item to TransUnion.

185.  On September 18, 2008, TransUnion sent Mr. Raslich the results of its investigation.

186.  TransUnion and Harvard Collection were continuing to report the account as past due in the amount of $169.00.  (Exhibit G).

**Verizon/MCM**

187.   In March of 2006, an imposter opened an account in Mr. Raslich's name with Verizon, partial account no. 851600

188.   The account went into default.

189.   MCM began to attempt to collect the account from Mr. Raslich.

190.   On July 21, 2008, Mr. Raslich also sent MCM a letter stating that the account did not belong to him.  (A copy of Mr. Raslich's dispute letter is attached as Exhibit K).

191.   Mr. Raslich's July 1, 2008 Experian Credit Report showed the account as a "potentially negative item," stating that the account had  "no status", account in dispute under Fair Credit Billing Act.  (Exhibit A).

192.   On July 21, 2008, Mr. Raslich sent a letter to Experian disputing that the account was his.  (Exhibit D)

193.   Mr. Raslich sent a copy of that letter to MCM.

194.   Upon information and belief, Experian forwarded Mr. Raslich's dispute to MCM.

195.   Upon information and belief, MCM verified the account as accurate to Experian.

196.   Upon information and belief, MCM did not conduct a reasonable investigation of Mr. Raslich's dispute.

197. Experian did not conduct an independent investigation of Mr. Raslich's dispute.

198. Experian's investigation of Mr. Raslich's dispute was not reasonable given that it knew that Mr. Raslich was the victim of identity theft.

199. On August 25, 2008, Experian sent Mr. Raslich the results of its investigation of his dispute, stating that the MCM account had been "reviewed."  (Exhibit E).

200. Mr. Raslich's August 13, 2008 TransUnion credit report showed the alleged account as a collection account, with a balance due of $404.00. (A redacted copy of Mr. Raslich's credit report is attached as Exhibit L).

201.  On August 19, 2008, Mr. Raslich disputed the same account, which was appearing on his TransUnion credit report.  (Exhibit F).

202. Mr. Raslich sent a copy of his dispute to MCM.

203. Upon information and belief, TransUnion forwarded Mr. Raslich's dispute to MCM.

204. MCM did not conduct a reasonable investigation of Mr. Raslich's dispute.

205. Upon information, MCM verified the account as accurate to TransUnion.

206. On September 18, 2008, TransUnion sent Mr. Raslich the results of its investigation, stating that the account would remain on his credit report. (Exhibit G).

**10 Telecom USA/CBCS**

207.   An imposter opened an account in Mr. Raslich's name with 10 Telecom USA, partial account no. 35832...

208.   The account went into default.

209.   CBCS began to attempt to collect the account from Mr. Raslich.

210.   Mr. Raslich's August 13, 2008, TransUnion Credit Report showed the account as an "adverse account", listing an amount past due of $60.00. (Exhibit L).

211.   On August 19, 2008, Mr. Raslich sent a letter to TransUnion disputing the debt as it was not his account.  (Exhibit F).

212.   Mr. Raslich sent a copy of his dispute to CBCS.

213.   Upon information and belief, TransUnion forwarded the dispute to CBCS.

214.   Upon information and belief, CBCS did not verify the debt.

215.   On September 18, 2008, TransUnion sent Mr. Raslich the results of its investigation, stating that the account would be removed from his credit report.

216.   On October 6, 2008, CBCS sent Mr. Raslich a letter stating that it had investigated his dispute, would cease its collection activities, and would return the account to Telcom USA.  (A copy of that letter is attached as Exhibit M).

217. Nevertheless, on March 25, 2009, CBCS called Mr. Raslich and asked him how he intended to pay his account.

218. At this time, Mr. Raslich resided in Arizona.

219. Mr. Raslich again informed CBCS that the account was not his and that it should stop contacting him.

**Civil Judgment**

220. Mr. Raslich's July 1, 2008 Experian Credit Report indicated that a civil claim judgment was entered against Mr. Raslich in October of 2003 by the Bell County Court in favor of Botanical Management.  (Exhibit A).

221. On July 21, 2008, Mr. Raslich sent a letter to Experian disputing that the account was his.  (Exhibit D).

222. Mr. Raslich sent a copy of his dispute to the Bell County Court.

223. Upon information and belief, Experian did not conduct a reasonable investigation of Mr. Raslich's dispute.

224. On August 25, 2008, Experian sent Mr. Raslich the results of its investigation of his dispute, stating that the judgment would remain.  (Exhibit E).

225. On August 19, 2008, Mr. Raslich sent a letter to TransUnion disputing that the judgment was improper.  (Exhibit F).

226. Mr. Raslich sent a copy of his dispute to Bell County court.

227. Upon information and belief, TransUnion did not conduct a reasonable investigation of Mr. Raslich's dispute.

228.   On September 18, 2008, TransUnion sent Mr. Raslich the results of its investigation, stating that the account would remain.  (Exhibit G).

### Mr. Raslich's Damages

229.   On July 7, 2008, Mr. Raslich received a denial letter from The Finance Company in connection with his application for a loan to purchase a vehicle. (A copy of the denial letter is attached as Exhibit N).

230.   The Finance Company's denial was based in part on information contained in Mr. Raslich's Experian credit report.

231.   Upon information in belief, The Finance Company's denial was based in part on inaccurate information resulting from the theft of Mr. Raslich's identity.

232.   On December 23, 2008, Mr. Raslich received a denial letter from Wells Fargo in connection with his application for a credit card.  (A copy of Mr. Raslich's denial letter is attached as Exhibit O).

233.   Wells Fargo's denial was based in part on information contained in Mr. Raslich's Experian credit report.

234.   Upon information and belief, Wells Fargo's denial was based in part on inaccurate information resulting from the theft of Mr. Raslich's identity.

235.   Mr. Raslich is afraid of applying for any further credit.

**Equifax's Refusal to Provide Mr. Raslich with a Credit Report**

236.   On April 21, 2008, Mr. Raslich was denied credit by Americredit for the purchase of an automobile.  (A copy of the denial letter is attached as Exhibit P).

237.   The denial was based in part on information contained in his Equifax credit report.

238.   On April 26, 2008, Mr. Raslich was denied credit by HSBC Auto Finance for the purchase of an automobile.  (A copy of the denial letter is attached as Exhibit Q).

239.   The denial was based in part on information contained in his Equifax credit report.

240.   In May of 2008, Mr. Raslich requested a copy of his credit report from Equifax.

241.   On May 9, 2008, Equifax responded to his request, requesting additional identification, such as a social security card, a pay stub with his social security number on it, a W2 form, driver's license, rental lease agreement, pay stub with address or utility bill.  (A copy of Equifax's letter is attached as Exhibit R).

242.   On June 13, 2008, Mr. Raslich sent Equifax the requested identification to the specified address.  (A copy of Mr. Raslich's letter is attached as Exhibit S).

243.   On June 19, 2008, Equifax sent Mr. Raslich a letter stating that he must request his credit report through www.annualcreditreport.com.  (A copy of Equifax's letter is attached as Exhibit T).

244.   On June 30, 2008, Mr. Raslich received another denial letter from Americredit for a loan for the purchase of a motor vehicle.  (A copy of the denial letter is attached as Exhibit U).

245.   Americredit's denial was based in part on information contained in Mr. Raslich's Equifax credit report.

246.   On July 8, 2008, Mr. Raslich received another denial letter from HSBC Auto Finance for a loan for the purchase of a motor vehicle.  (A copy of the denial letter is attached as Exhibit V).

247.   HSBC's denial was based in part on information contained in Mr. Raslich's Equifax credit report.

248.   In accordance with the instructions contained in Equifax's June 19th letter, Mr. Raslich requested his credit report through www.annualcreditreport.com using the form provided on that cite to request a credit report by mail.

249.   In response, Mr. Raslich received the same letter from Equifax, dated July 27, 2008,  as he had received on May 9, 2008, seeking the same additional identification, which Mr. Raslich had already sent.  (A copy of that letter is attached as Exhibit W).

250.   Mr. Raslich again provided the requested identification on August 7, 2008. (A copy of that letter is attached as Exhibit X).

251.   On August 17, 2008, Equifax sent Mr. Raslich another letter, identical to its June 19, 2009 letter, stating that he must go through www.annualcreditreport.com.  (A copy of that letter is attached as Exhibit Y).

252.   Mr. Raslich again attempted to get his credit report through www.annualcreditreport.com.

253.   On September 3, 2008, Equifax sent Mr. Raslich a third letter, identical to its letters of May 09, 2008 and July 27, 2008, seeking the same additional identification, which Mr. Raslich had already sent.  (A copy of that letter is attached as Exhibit Z).

254.   On September 30, 2008, Mr. Raslich again sent the requested identification to the specified address.

255.   On October 27, 2008, Equifax sent Mr. Raslich the fourth identical letter requesting additional identification.  (A copy of that letter is attached Exhibit AA).

256.   Mr. Raslich then gave up.

257.   To date, Equifax has not sent him a copy of his Equifax credit report.

## CLAIMS AGAINST DEFENDANT DEBT COLLECTORS

## COUNT I: VIOLATION OF THE FDCPA

258.  Defendant AFNI, CPS, Asset Acceptance, Harvard Collection, MCM, CBCS ("Defendant debt collectors") above-described actions violate the FDCPA, including but not limited to 15 U.S.C. § 1692e, e(2),e(10), 15 U.S.C. § 1692f.

259.  As a result of Defendant debt collectors violations of the FDCPA, Mr. Raslich has suffered damages in an amount to be determined by this Court.

260.  Therefore, Mr. Raslich is entitled to recover actual and statutory damages, attorney's fees and costs from each of Defendant debt collectors.  15 U.S.C. § 1692k.

## COUNT II: VIOLATION OF THE FCRA
## 15 U.S.C.§1681s-2(b)(1)

261.  Upon receiving notice of Mr. Raslich's disputes from Experian and TransUnion, Defendant debt collectors failed to reasonably investigate those disputes in violation of the FCRA. 15 U.S.C.§1681s-2(b)(1).

262.  Defendant debt collectors knowingly and intentionally failed to investigate those disputes in conscious disregard of the rights of Mr. Raslich.

263.  Defendant debt collectors willfully and/or negligently violated the provisions of the FCRA.

264.  As a result of Defendant debt collectors' violations of the FCRA, Mr. Raslich suffered damages in an amount to be determined by this Court.

265.   Mr. Raslich is therefore entitled to recover actual or statutory damages, whichever is greater, punitive damages, and attorney's fees and costs.  15 U.S.C. § 1681n(a).

## CLAIM AGAINST EXPERIAN AND TRANSUNION

## COUNT III: VIOLATION OF THE FCRA

266.   In the entire course of its action, Experian and TransUnion willfully and/or negligently violated the provisions of the FCRA in the following respects:

   a.   By failing to conduct a reasonable reinvestigation upon Mr. Raslich's disputes of the incorrect reporting on his credit report.  15 U.S.C. § 1681s-2(b).

267.   As a result of Experian and TransUnion's failure to comply with the FCRA, Mr. Raslich has suffered damages in an amount to be determined by this Court.

268.   Mr. Raslich is therefore entitled to recover actual or statutory damages, whichever is greater, punitive damages and costs and attorney's fees.  15 U.S.C. §. 1681n.

## CLAIMS AGAINST EQUIFAX

## COUNT IV: VIOLATION OF THE FCRA

269.   Equifax negligently or willfully failed to provide Mr. Raslich with a copy of his credit report in violation of the FCRA.  15 U.S.C. § 1681j.

270.   As a result of Equifax's violation of the FCRA, Mr. Raslich suffered damages

in an amount to be determined by this Court.

271.   Equifax's violation of the FCRA was negligent or willful.

272.   Mr. Raslich is therefore entitled to recover actual or statutory damages,

whichever is greater, and  punitive damages and costs and attorney's fees.  15

U.S.C. § 1681n.

### JURY DEMAND

273.   Mr. Raslich demands a jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant the following relief

against Defendants:

        a)     Actual damages;

        b)     Punitive damages;

        c)     Statutory damages;

        c)     Attorney's fees; and

        d)     Costs.

RESPECTFULLY SUBMITTED August 6, 2009.

                        CHOI & FABIAN, PLC

                        __Hyung S . Choi /s/_____

                        Hyung S. Choi
                        Veronika Fabian
                        Attorneys for Plaintiff